UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Traci L. Dillard and Rick D. Dillard,                          Civil No. 05-2334 (PAM/JSM)

                Plaintiffs,

v.                                                                                    **MEMORANDUM AND ORDER**

Torgerson Properties, Inc., d/b/a
Hilton Garden Inn, a Minnesota
corporation,

                Defendant.

---

This matter is before the Court on Defendant's Motion for Summary Judgment. For the reasons that follow, the Court grants the Motion.

**BACKGROUND**

Defendant Torgerson Properties, Inc. owns and operates the Hilton Garden Inn in Bloomington, Minnesota. Plaintiff Traci Dillard was a guest of the hotel on January 9, 2004. While in her hotel room, Mrs. Dillard stepped on a hypodermic needle that was concealed under a bed skirt near the wall of her room. Although Mrs. Dillard does not know whether she stepped on the needle itself or the plastic plunger, one or the other punctured her toe.

After stepping on the needle, Mrs. Dillard called the front desk to inform hotel personnel of the incident. Gerilyn Johanneson, a hotel employee, went to Mrs. Dillard's room and placed the needle in a plastic bag. As the women rode down the elevator, Johanneson attempted to hand the plastic bag to Mrs. Dillard so that Mrs. Dillard could inspect the needle. As Mrs. Dillard reached for the bag, the needle poked her index finger,

drawing blood.

Defendant retained possession of the needle immediately after the incident. Neither Defendant nor Mrs. Dillard tested the needle to determine whether it was contaminated. Indeed, the record indicates that such testing would have been futile, as a needle must be tested within hours of utilization to obtain accurate results. (Dr. Aschenbrener Aff. ¶ 13.) Defendant later informed Mrs. Dillard that the syringe was believed to have contained a growth hormone.

When Mrs. Dillard returned to Colorado, she consulted her family physician, who alerted Mrs. Dillard of the possibility of contracting a communicable disease such as human immunodeficiency virus (HIV) or hepatitis from the needle. Because the source of the hypodermic needle was unknown and unable to be tested, the physician treated Mrs. Dillard as being actually exposed to HIV and hepatitis. Consequently, Mrs. Dillard underwent several tests for HIV and hepatitis during the two years following the incident. All tests were negative for both diseases.

Since the incident, Mrs. Dillard has experienced anxiety, headaches, sleep loss, bladder infections, and acid reflux as a result of her stress and worry. She has been diagnosed with post-traumatic stress disorder and takes anti-anxiety medications. In addition, she refrained from having sexual relations with her husband for about nine months in fear of infecting him. The Complaint sets forth seven claims: (1) negligent infliction of emotional distress, (2) negligent failure to maintain safe and clean premises, (3) negligent failure to render prompt and competent aid, (4) negligence per se based on violations of

Minnesota Rules 4625.1600 and 4625.1900, (5) intentional infliction of emotional distress, (6) civil battery, and (7) loss of consortium.

**DISCUSSION**

**A.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. <u>Id.</u>  The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. <u>Enter. Bank v. Magna Bank</u>, 92 F.3d 743, 747 (8th Cir. 1996).  However, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. <u>Enter. Bank</u>, 92 F.3d at 747.  A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986).

**B.     Negligent Infliction of Emotional Distress**

Mrs. Dillard claims to have suffered severe emotional distress from her fear of contracting a communicable disease, such as HIV or hepatitis, from the needle. To establish a claim of negligent infliction of emotional distress, Mrs. Dillard must prove three elements: (1) she was within a zone of danger of physical impact; (2) she reasonably feared for her own safety; and (3) she suffered severe emotional distress with attendant physical manifestations. See K.A.C. v. Benson, 527 N.W.2d 553, 557 (Minn. 1995) (citing Stadler v. Cross, 295 N.W.2d 552, 553 (Minn. 1980)). Defendant challenges only the first prong, arguing that Mrs. Dillard cannot recover for emotional distress due to her fear of contracting a disease because she cannot produce any evidence that she was actually exposed to a disease.

K.A.C. is directly on point. In that case, the plaintiff sued her physician who was HIV positive and had sores on his hand when he examined her. Although the physician touched the plaintiff, there was no evidence that his sores had contacted her. Because merely touching an individual infected with HIV is not an accepted means of transmission, the Minnesota Supreme Court found that the plaintiff could not establish that she was ever exposed to HIV and therefore could not show that she was within a zone of danger. Id. at 556-60. It explained:

> [C]ases permitting recovery for negligent infliction of emotional distress are characterized by a reasonable anxiety arising in the plaintiff, with attendant physical manifestation, from being in a situation where it was abundantly clear that plaintiff was in grave personal peril for some specifically defined period of time. Fortune smiled and the imminent calamity did not occur. Here, the situation is quite different. The facts . . . indicate that [the defendant's] actions never did place [the plaintiff] in "apparent, imminent peril" of contracting HIV

> because she was not actually exposed to the AIDS virus.  Transmission of HIV from [the defendant] to plaintiff was, fortunately, never more than a very remote possibility.
>
> . . .
>
> However, a remote possibility of personal peril is insufficient to place plaintiff within a zone of danger for purposes of a claim of negligent infliction of emotional distress.

Id. at 559.  Thus, "a plaintiff who fails to allege actual exposure to HIV is not, as a matter of law, in personal physical danger of contracting HIV, and thus not within a zone of danger for purposes of establishing a claim for negligent infliction of emotional distress."  Id.

Mrs. Dillard attempts to distinguish K.A.C. by noting that her claims do not arise from a person merely touching her.  Rather, her fear stemmed from a needle puncture that had an unknown source.  She notes that the Minnesota Supreme Court, as well as the medical community, recognize that contact with contaminated needles may transmit HIV.  In addition, Mrs. Dillard urges the Court to follow South Central Regional Medical Center v. Pickering, 749 So. 2d 95 (Miss. 1999), which created a presumption of actual exposure when the defendant failed to test the potentially contaminated object.[1]  Finally, she emphasizes that she was treated as if she was actually exposed to HIV and hepatitis, and that her fear was grounded in the treatment and the actual exposure declared by her physician.

---

[1] In South Central, a used lancet punctured the plaintiff at a hospital.  749 So. 2d at 97.  A hospital employee discarded the lancet, despite knowing that the sterility of the lancet was questioned.  Id.  The plaintiff sued the hospital for her mental distress from her fear that she had contracted HIV.  Id. at 98.  The Mississippi Supreme Court created a presumption of actual exposure when a defendant, with notice of the importance of the instrument, fails to act in a way that would allow the instrument to be tested.  Id. at 102.

The Court rejects Mrs. Dillard's arguments for several reasons.  First, although the Minnesota Supreme Court recognized that contact with a contaminated needle is a means of transmission, it also rejected case law that permitted a negligent infliction claim based solely on being pricked by a discarded needle.  See K.A.C., 527 N.W.2d at 560 n.9 (noting that Castro v. New York Life Ins., 588 N.Y.S.2d 695, 697 (N.Y. Sup. Ct. 1991), which allowed an individual pricked by a discarded needle to pursue an emotional distress claim, was "an aberration").  Indeed, most jurisdictions that have considered emotional distress claims based on the fear of contracting HIV have required actual exposure to HIV.  See, e.g., Burk v. Sage Prods., Inc., 747 F. Supp. 285, 288 (E.D. Pa. 1990) (absent proof that the plaintiff was in fact exposed to HIV, the plaintiff cannot recover damages for his fear of contracting autoimmune deficiency syndrome (AIDS)); Brown v. New York City Health & Hosps. Corp., 648 N.Y.S.2d 880, 886 (N.Y. Sup. Ct. 1996) (actual exposure requires proof of both a scientifically accepted method of transmission of the virus, and that the source of the allegedly transmitted blood or fluid was in fact HIV-positive); Carroll v. Sisters of Saint Francis, 868 S.W.2d 585, 594 (Tenn. 1993) (individual who pricked her finger on contaminated needle while visiting hospital could not recover emotional damages for her fear of contracting AIDS, where she tested negative for presence of HIV antibodies and she admitted that she could not prove that needles which pricked her were contaminated with HIV); Babich v. Waukesha Mem'l Hosp., Inc., 556 N.W.2d 144, 147 (Wis. Ct. App. 1996) (requiring a plaintiff in a needle-stick case to prove that the needle came from a contaminated source).  There is no evidence in this case that the needle was contaminated or contained any

communicable disease.

Indeed, even if the needle had once been in contact with HIV, there is only a minuscule possibility that the virus survived. Even abnormally high concentrations of HIV that are used to test its survival outside of the body are reduced by 90-99% within several hours. See Ctr. for Disease Control & Prevention, HIV and Its Transmission (July 1999), at http://www.cdc.gov/hiv/resources/factsheets/PDF/transmission.pdf. Based on Mrs. Dillard's check-in and the approximate time of the alleged incident, the needle had been exposed to the environment for more than twenty-nine hours by the time Mrs. Dillard stepped on it. After that amount of time, there is only a remote chance that the needle would still be contaminated. That is insufficient under K.A.C.

Finally, the policy reasons underlying the South Central decision do not apply in this case. First, the defendant in South Central was a hospital, where the potential for exposure to blood and other bodily fluids is significant. Thus, the South Central court stressed that health care providers must use reasonable care in handling instruments capable of transmitting diseases. 749 So. 2d at 102. In this case, Defendant is a hotel operator and has neither a statutory duty nor the expertise to prepare a detailed medical plan for exposure to infectious diseases. Second, the South Central court essentially applied the spoliation doctrine, admonishing the hospital for destroying evidence and thereby undermining the important public concern of promoting good health. Id. Here, Defendant still possesses the needle. It merely did not test the needle, and the record shows that such testing would have been fruitless, even if done immediately after the needle was recovered.

Because Mrs. Dillard cannot establish that she was actually exposed to a communicable disease, she cannot show that she was in a zone of danger and the negligent infliction of emotional distress claim fails as a matter of law.

**C.     Other Negligence Claims**

Mrs. Dillard brings three other negligence claims: (1) negligent failure to maintain safe and clean premises; (2) negligent failure to render prompt and competent aid; and (3) negligence per se based on violations of Minnesota Rules 4625.1600 and 4625.1900, which are regulations that require hotels to keep clean premises.  To establish these claims, Mrs. Dillard must establish four elements: (1) Defendant owed her a duty of care; (2) Defendant breached that duty; (3) she sustained an injury; and (4) Defendant's breach proximately caused her damages.  Gradjelick v. Hance, 646 N.W.2d 225, 230 (Minn. 2002).[2] Defendant argues that Mrs. Dillard cannot establish damages.  Mrs. Dillard responds that the needle pricks caused her physical injury, and that she suffered parasitic mental anguish as a result of that injury.

In Lickteig v. Alderson, Ondov, Leonard & Sween, P.A., 556 N.W.2d 557 (Minn. 1996), the Minnesota Supreme Court recognized that a plaintiff may recover for parasitic emotional distress damages in a negligence claim.  Id. at 560.  However, the Court limited

---

[2] Negligence per se is a form of ordinary negligence that results from a violation of a statute, ordinance, or regulation. "A per se negligence rule substitutes a statutory standard of care for the ordinary prudent person standard of care, such that a violation of a statute (or an ordinance or regulation adopted under statutory authority) is conclusive evidence of duty and breach."  Gradjelick, 646 N.W.2d at 231 n.3.

8

parasitic damages to cases involving a "direct invasion of the plaintiff's rights such as that constituting slander, libel, malicious prosecution, seduction, or other like willful, wanton, or malicious conduct." Id. (citations omitted). Mrs. Dillard has no evidence of willful, wanton, or malicious conduct. Thus, parasitic damages are unavailable.

Moreover, Mrs. Dillard's mental distress was not caused by the puncture wounds. Rather, the distress arose from the fear of contracting a communicable disease as a result of the needle pricks. As previously explained, Mrs. Dillard cannot recover for emotional distress due solely to the fear of contracting a disease when she cannot produce evidence of actual exposure. The other negligence claims therefore fail.

**D.      Intentional Infliction of Emotional Distress**

To sustain an intentional infliction of emotional distress claim, Mrs. Dillard must establish: (1) the conduct was extreme and outrageous; (2) the conduct was intentional and reckless; (3) it caused emotional distress; and (4) the distress was severe. K.A.C., 527 N.W.2d at 560 (citing Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983)). The actor must intend to cause severe emotional distress or proceed with the knowledge that it is highly probable that severe emotional distress will occur. Id. (citing Dornfeld v. Oberg, 503 N.W.2d 115, 119 (Minn. 1993)). Furthermore, the claim requires the plaintiff to prove that the defendant's conduct was so atrocious, outrageous, and extreme that "it passes the boundaries of decency and is utterly intolerable in a civilized community." Langeslag v. KYMN, Inc., 664 N.W.2d 860, 864 (Minn. 2003) (citation omitted).

The claim fails for two reasons. First, no evidence suggests that either Defendant or

Johanneson intended for Mrs. Dillard to suffer severe emotional distress after being pricked with the needle.  Second, Defendant's failure to detect the needle, which laid beneath a bed skirt, does not rise to the level of extreme or outrageous conduct to sustain an intentional infliction of emotional distress claim.

**E.     Battery**

The civil battery claim is based on Johanneson pricking Mrs. Dillard with the needle. "A battery occurs when a person intentionally causes harmful or offensive contact with another, or causes an imminent apprehension of such contact." Taylor v. R & N Mfg., Civ. No. 99-1086, 2002 WL 187506, at *5 (D. Minn. Jan. 23, 2002) (Tunheim, J.) (citing Schumann v. McGinn, 240 N.W.2d 525, 529 n.4 (Minn. 1976)).  There is no evidence that Johanneson intended to harm or offend Mrs. Dillard.  Even if passing the bag involved an unreasonable risk that the needle in the bag would prick Mrs. Dillard, the act does not amount to a battery.  Id.  Accordingly, the battery claim fails.

**F.     Loss of Consortium**

Rick Dillard brings a loss of consortium claim.  A loss of consortium claim is derivative.  Kohler v. Fletcher, 442 N.W.2d 169, 173 (Minn. Ct. App. 1989) (citing Peters v. Bodin, 65 N.W.2d 917, 922 (Minn. 1954)).  Because the underlying tort claims fail, the loss of consortium claim fails as well.

**CONCLUSION**

Mrs. Dillard cannot prove exposure to a communicable disease such as HIV or

hepatitis. She therefore cannot establish that she was in a zone of danger, as required for the negligent infliction of emotional distress claim. The other negligence claims fail because Mrs. Dillard cannot rely on parasitic damages to establish her injury. The intentional tort claims fail because Mrs. Dillard cannot establish that Defendant intended to harm, offend, or otherwise cause severe emotional distress. Finally, because all underlying tort claims fail, the Court also dismisses the loss of consortium claim. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment (Docket No. 10) is **GRANTED**; and

2. The Complaint is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: October 16, 2006

<u>s/ Paul A. Magnuson</u>
Paul A. Magnuson
United States District Court Judge